1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

## SOUTHERN DIVISION

11

| | |
|---|---|
| ARVIN KO, | Case No.: SACV 15-00770-CJC(DFMx) |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| BANK OF AMERICA, N.A. AND DOES 1-10, inclusive, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Arvin Ko is a homeowner with a mortgage serviced by Defendant Bank of America, N.A. (BANA).  Mr. Ko filed a complaint in state court alleging eight claims against BANA, all of which are related to a 2010 loan modification he accepted and his

later failed attempts to seek an additional modification.  Specifically, he alleged two violations of California's Homeowner Bill of Rights, negligent misrepresentation, negligence, violation of California's Unfair Competition Law (UCL), breach of contract, violation of the implied covenant of good faith and fair dealing, and promissory estoppel.

BANA subsequently removed the case to federal court based on diversity jurisdiction and Mr. Ko has moved to remand the case to state court on the basis that the amount in controversy requirement was not met.  For the reasons discussed below, the motion to remand is DENIED.

BANA separately moved to dismiss all of Mr. Ko's claims on Rule 12(b)(6) grounds.  Mr. Ko expressly abandoned his claims for breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel.  (Dkt. 14, Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1.)  Those claims are therefore DISMISSED without leave to amend.

For the reasons stated below, BANA's motion to dismiss is GRANTED with leave to amend with respect to the HBOR claim under California Civil Code § 2923.6, the negligent misrepresentation claim, and the portions of the UCL claim alleging unfair business practices and fraudulent business practices.  The motion to dismiss is DENIED with respect to Mr. Ko's HBOR claim under California Civil Code § 2923.7, the negligence claim, and the portion of the UCL claim alleging unlawful business practices under the HBOR.

## II.  BACKGROUND

In July 2006, Mr. Ko obtained a loan in the amount of $552,000, which was secured by a deed of trust over real property located at 10242 Tyhurst Road in Garden

Grove, California (the "Property").  (Compl. ¶¶ 1, 12.)  At some point before 2010, BANA took over the servicing rights from the original lender.  (*Id.* ¶ 15.)  In July 2010, Mr. Ko applied for and obtained a loan modification from BANA, and that modification was recorded.  (Compl. ¶ 16.)  The terms of this modification substantially altered his original obligation.  They entitled Mr. Ko to make interest-only payments for eight years, after which time he would begin to pay principal and interest for the remaining life of the loan, capped interest rates at 5.25%, and reamortized the loan as a 40-year loan (it had been a 30-year loan).  (Compl. Ex. B.)  The agreement also enabled BANA to capitalize Mr. Ko's arrears, thereby increasing the total balance to $633,948.05, over $80,000 more than the value of the initial loan.  (*Id.*)

Mr. Ko alleges that in September 2014 he submitted another loan modification application, and after not hearing from BANA for almost four months, his nonprofit agent called BANA to follow up.  (Compl. ¶ 20.)  After another month of delay, Mr. Ko's nonprofit agent called BANA and spoke with a BANA employee named Tammy, purportedly Mr. Ko's legally mandated single point of contact (SPOC) there.  (*Id.* ¶ 21.)  Tammy stated that no documents were missing from Mr. Ko's application.  (*Id.*)  As of the date of the complaint, Mr. Ko was directed to speak with several different people at BANA who were unfamiliar with his situation rather than a SPOC, and he has not been provided with any acknowledgement of the receipt of his 2014 loan modification application, request for further documentation, or written denial of the application. (Compl. ¶ 22.)

Mr. Ko asserts that his loan modification has worked to his detriment and that when he sought an additional modification, BANA refused to consider it until he was in default and then "ignored" his application.  He seeks damages pertaining to the forgiveness of arrears and late penalties, as well as a good faith loan modification review. He also seeks an injunction prohibiting foreclosure activity in the future.

## III.  ANALYSIS

### A.  Subject Matter Jurisdiction

A civil action brought in a state court, but over which a federal court may exercise original jurisdiction, may be removed by the defendant to a federal district court.  28 U.S.C. § 1441(a).  Plaintiff's complaint was removed to federal court on the basis of diversity jurisdiction.  (Dkt. 1, Notice of Removal at 1.)  A district court has original "diversity" subject matter jurisdiction over all "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost," and the action is "between citizens of different States."  28 U.S.C. § 1332(a)(1).  If it appears that the district court lacks subject matter jurisdiction at any time prior to the entry of final judgment, the Court must remand the action to state court.  28 U.S.C. § 1447(c).

Mr. Ko concedes that the parties are diverse, but now seeks to remand the case to state court on the basis that the amount-in-controversy requirement has not been met.  (Pl.'s Mot. to Remand at 2.)  The parties are in accord that it is ambiguous from the complaint whether the amount in controversy exceeds $75,000.  (Dkt. 13, Pl.'s Mot. to Remand at 5; Dkt. 15 Def.'s Op. to Pl.'s Mot. to Remand at 2-3.)  When it is unclear or ambiguous from the complaint whether the requisite amount in controversy is pled, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

Several allegations in Mr. Ko's complaint lead this Court to conclude that a preponderance of the evidence shows the amount in controversy requirement has been met.  First, the complaint alleges that "Plaintiff is suing for damages that are related to violation [of] various California statutes and the Homeowner Bill of Rights Act wherein the amount of controversy is approximately $75,000.00 and/or according to proof." (Compl. ¶ 11.)  This means that any relief with any value at all in addition to these damages would likely take the amount in controversy over $75,000.  Here, the Prayer for Relief—in addition to seeking a nonspecific amount of damages—seeks "an order awarding Plaintiff reasonable attorney's fees" and "an injunction enjoining defendants from conducting further foreclosure activity in particular recording a notice of default or notice of trustee's sale of the subject property."  (Compl. at 16.)

The Ninth Circuit has noted that "Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees." *Guglielmino*, 506 F.3d at 700.  Even a modest award of attorney's fees in this case would likely push the amount in controversy over the $75,000 mark, given Ko's acknowledgement that damages are "approximately $75,000."

And though the Court rejects BANA's argument that the injunction Plaintiff seeks puts the entire value of the mortgage in controversy, such an injunction would nevertheless provide *some* value to Ko or impose some cost on BANA, thereby making the amount in controversy exceed $75,000.

As further indication that the amount in controversy exceeds $75,000, BANA points to Ko's pleading that after he received a loan modification in 2010, "[t]he Loan Modification which was recorded in the Orange County Recorder's Office, stated the original amount of the loan ($552,000.00) and modified amount now due $633,948.05. Out of thin air Plaintiff has incurred an additional $81,948.00 and has not benefited in

any way shape or form from this additional amount of money."  (Compl. ¶ 16.)  In his negligence claim, Ko characterizes this as a "bogus, ludicrous, illegal and predatory loan modification," (Compl. ¶ 74.)  Elsewhere in the complaint he indicates that he:

> demands recompense of damages by forgiveness of arrears, late penalties and a good faith loan modification review.  Plaintiff also demands recompense of damages as a result of being harmed by Defendant's violations including, but not limited to harmed credit, inordinate late fees and penalties.

(Compl. ¶ 56.)  These pleadings strongly suggest that though Ko is not placing in controversy the entire value of the home, he is at least disputing the $81,948 added to his loan above the original amount.

Mr. Ko's briefing correctly argues that here, where he is seeking a loan modification, the amount in controversy is not the entire value of the underlying loan. *See, e.g., Olmos v. Residential Credit Solutions*, SACV 14-1202, 2015 WL 1240347, at *2 (C.D. Cal. Mar. 17, 2015).  Mr. Ko has not, however, even acknowledged, much less refuted, BANA's arguments that are based on the hard numbers in his complaint.  Given those allegations concerning his damages and the additional injunctive relief and attorneys' fees he seeks, the Court concludes that the preponderance of the evidence indicates that there is an amount in controversy greater than $75,000.  Accordingly, Ko's motion to remand is DENIED.

### B.  BANA's Request for Judicial Notice

Generally, on a motion to dismiss, a court may consider three things: (1) "allegations contained in the pleadings," (2) "exhibits attached to the complaint," and (3) "matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007).  Defendants have requested that the Court take judicial notice of three

documents pertaining to Mr. Ko's mortgage.  (Dkt. 12.)  Mr. Ko has not disputed the request with respect to any of the documents.  The first document (Ex. A) is the History of Conforming Loan Limits, which is issued by the Federal Housing Finance Agency as part of its 2007 Report to Congress.  (*Id.*)  The second (Ex. B) is the Daily Treasury Yield Curve Rates from the United States Department of the Treasury for 2006.  (*Id.*)  As the authenticity of these documents is not in dispute and both are available on government websites, the court will take judicial notice of them.  Courts routinely take judicial notice of documents available on government websites because the documents are not subject to reasonable dispute.  *Freeney v. Bank of Am. Corp.*, CV1502376, 2015 WL 4366439, at *13 (C.D. Cal. July 16, 2015).  The third document (Ex. C) is titled "Adjustable Rate Balloon Note."  It is dated July 12, 2006, was executed by Arvin Ko, and evidences a $552,000 loan obligation to Homecomings Financial Network, Inc.  A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  Here, the complaint refers to the mortgage loan from Homecomings Financial Network in that amount, the mortgage is central to Mr. Ko's claim, and no party has questioned its authenticity.  Accordingly, the Court takes judicial notice of it.  BANA's request for judicial notice (Dkt. 12) is GRANTED.

## C. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev*. Corp., 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe

them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### 1. Section 2923.6 of the HBOR

Mr. Ko's complaint alleges that BANA engaged in negotiations with Mr. Ko regarding a mortgage modification while simultaneously moving to foreclose on the property at issue—a process called "dual tracking" that is forbidden under California Civil Code § 2923.6.  (Compl. ¶ 25.)  Specifically, the complaint cites § 2923.6(c), which provides that if a borrower submits a complete application for a first lien loan modification, a mortgage servicer

> shall not *record a notice of default or notice of sale or conduct a trustee's sale* until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code § 2923.6(c) (emphasis added).  Mr. Ko's complaint does not, however, allege that BANA or anyone else ever recorded a notice of default or notice of sale on the Property or conducted a trustee sale of the Property, so it is unclear how subsection (c) could apply to this case.

BANA also asserts that this claim fails based on text in Section 2923.6 providing that:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, *the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013*, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g) (emphasis added).  Here, Mr. Ko's pleading acknowledges that he sought and was granted a modification in 2010, so BANA would be under no obligation under § 2923.6 to evaluate his application absent a documented and submitted material change in his circumstances.  Mr. Ko's opposition brief ignores BANA's arguments concerning the requirements of § 2923.6(c) and (g), and points to no other subsection of the statute or caselaw that indicates the statute is applicable to his case. The sole case Mr. Ko did cite in his opposition, *Bowman v. Wells Fargo Home Mortg.*, is plainly distinguishable, as there the plaintiff alleged that the defendant "denied her loan modification application and that before 31 days had expired, a Notice of Default was recorded by Wells Fargo against her."  13-cv-05850, 2014 WL 1921829, at *5 (N.D. Cal. May 13, 2014).  Those allegations plead a violation of § 2923.6(c).  Mr. Ko does not. This claim is DISMISSED with leave to amend.

### 2.  Section 2923.7 of the HBOR

California Civil Code § 2923.7 provides that when a lender receives an application for a foreclosure prevention alternative, the lender is required to "promptly establish a single point of contact" who is responsible for, among other things, "coordinating receipt of all documents associated with available foreclosure prevention alternatives," "notifying the borrower of any missing documents necessary to complete the application," and "[h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative." Cal. Civ. Code §§ 2923.7(b)(2)-(3).

Mr. Ko alleges that BANA violated this statute because it "failed to assign [him] a single point of contact."  (Compl. § 34.)  He further alleges that "there was no update or communication" after he submitted his loan modification, and that BANA "deliberately provided multiple and divergent points of contact to him, none of whom could or would give in a straight answer about anything to do with his home or . . . eligibility for a loan modification."  (*Id.*)  He asserts that when calling BANA, he was "directed to speak to several customer service representatives and not to an individual who had specific knowledge of their [sic] account."  (Compl. ¶ 22.)  He also claims that BANA has not provided "an acknowledgement of receipt of [his loan modification request], request for further documentation or a denial of the [modification request] in writing."  (Compl. ¶ 22.)

Citing one court's determination that "Section 2923.7 does not impose a duty on the single point of contact to 'describe the foreclosure process, answer questions in a timely and effective manner, and [provide] updates on the status of [a borrower's] home," *Cordero v. U.S. Bank, N.A.*, 14CV1709, 2014 WL 4658757, at *5 (S.D. Cal. Sept. 17, 2014), BANA argues that Mr. Ko was seeking information that his SPOC had no duty to

provide him under § 2923.7.  But unlike the more general information about the foreclosure process or information about the status of the borrowers home mentioned in *Cordero*, here Mr. Ko and his nonprofit representatives were seeking information specific to his modification request: information about his eligibility for a loan modification and further documentation or a denial of the modification request in writing.  These duties fall within a SPOC's duty to have "access to current information" and to "timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative."  Cal. Civ. Code § 2923.7(b)(3); *see Hixson v. Wells Fargo Bank NA*, No. C 14–285, 2014 WL 3870004, at *5-6 (N.D. Cal. Aug. 6, 2014) (denying motion to dismiss where the complaint alleges that none of the plaintiff's multiple SPOCs "were able to perform the responsibilities of a single point of contact and were not knowledgeable about plaintiff's situation and current status").

BANA also argues that Mr. Ko's allegation that the did not have a SPOC at BANA must be dismissed because he admitted in his complaint that he spoke with "'Tammy' the purported SPOC at BANA."  (Compl. ¶ 21.)  But the mere fact that a BANA employee was identified as Mr. Ko's SPOC fails to show that BANA complied with the statutory requirements of § 2923.7: the point of Mr. Ko's allegation is that this nominal SPOC—be it an individual or a group— did not in fact carry out the substantive obligations that HBOR demands of SPOCs.  BANA's motion to dismiss is DENIED with respect to this claim.

### 3.  Negligent Misrepresentation

Under California law, "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale."  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 68 (2013).  The elements of negligent

misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Argueta v. J.P. Morgan Chase*, CIV. 2:11–441, 2011 WL 6012323, at *4 (E.D. Cal. Dec.1, 2011) (quoting *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).   In the mortgage context, California district courts have generally required that negligent misrepresentation be pled with particularity under Rule 9(b).  *See, e.g., Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1199 (S.D. Cal. 2010).   "[I]n alleging fraud or mistake, Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

Here, Mr. Ko's complaint simply states that "Plaintiff alleges Defendants negligently made a false representation to him," that "BANA represented to Plaintiff that they would assist him to avoid foreclosure."  (Compl. ¶¶ 58-59.)  This says nothing about who made the representation or when it was made, and it is vague as to what was said concerning the "assistance" offered.  It cannot meet Rule 9(b)'s pleading standard.  Mr. Ko's briefing in opposition to the motion to dismiss makes no argument that he complied with the Rule 9(b) standard—indeed, it does not mention the standard at all.  This claim is DISMISSED with leave to amend.

### 4.  Negligence

To state a claim for negligence under California law, a plaintiff must "allege a duty, a breach of that duty, and injury to the plaintiff as a proximate result of that breach." *Krawitz v. Rusch*, 209 Cal. App. 3d 957, 963 (1989).  Here, BANA argues that

Mr. Ko cannot establish that BANA owed him a duty of care with respect to his loan modification, and that Mr. Ko has not alleged damages resulting from breach.

In California, "[a]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991).  Federal district courts in this state and California appellate courts are divided on the question of whether accepting documents for a loan modification is within the scope of a lender's conventional role as a mere lender of money, or whether it can give rise to a duty of reasonable care with respect to the processing of the loan modification application.

In *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 898 (2013),  the California Court of Appeal held that the lender of a construction loan that had made "specific representations" to the borrower concerning "the likelihood of a loan modification" owed the borrower a duty of reasonable care.  The *Jolley* court noted that "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower.  Rather, the *Nymark* court explained that the question of whether a lender owes such a duty requires 'the balancing of the "*Biakanja* factors." ' "  *Id.* at 901 (quoting *Nymark*, 231 Cal. App. 3d at 1098).  It concluded that "*Nymark*  and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money."  *Id.* at 902 (quoting *Ottolini v. Bank of America*, C-11-0477, 2011 WL 365250, at *6 (N.D. Cal. Aug. 19, 2011).

California courts employ the *Biakanja* test to determine whether "a financial institution owes a duty of care to a borrower-client."  *Nymark*, 231 Cal. App. 3d 1089, 1098 (1991).  The test requires the balancing of six "non-exhaustive" factors: "(1) the

extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Jolley*, 213 Cal. App. 4th at 899 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)).

Applying the factors, the *Jolley* court noted that the construction loan transaction "was intended to affect the plaintiff" and that the lender's "representations were made directly to Jolley, and were certainly likely to, if not intended to, affect his decisionmaking." *Jolley*, 213 Cal. App. 4th at 900. The court also found that it was "certainly foreseeable" that harm could ensue in the event of negligence, as it was foreseeable that Jolley's credit rating could be affected if the bank failed to negotiate with him in good faith, and that Jolley would "sink more of his own money into the project, thereby suffering further injury." *Id.* It also found that there was an actual injury, and that "the upbeat prediction of the availability of a loan modification and the rollover of the loan into a conventional mortgage was almost certainly a primary factor in causing this particular injury." *Id.* The court acknowledged that it could not tell at that point "how blameworthy [the lender's] conduct may prove to be," but that "this was not a case . . . where the borrower was in a better position to protect his own interests." *Id.* Rather, "[t]o the contrary, Jolley's ability to protect his own interests in the loan modification process was practically nil." *Id.* The court further noted that the lender "benefitted from prolonging the loan negotiation period and encouraging Jolley to complete construction certainly lends itself to a blameworthy interpretation." *Id.* at 901. Ultimately, the court concluded that the lending bank's conduct extended beyond that of being a mere lender of money, and that a duty of reasonable care was owed to the borrower as a result of its actions and representations. *Id.* at 905-06.

A subsequent California Court of Appeal decision considered whether *Jolley*'s reasoning applies in the residential home loan context. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013). There, the borrower sued the lender after it foreclosed on him two weeks after sending him a letter promising that no foreclosure would take place while he was being considered for foreclosure avoidance programs. *Id.* at 55. Earlier, the bank lender put the borrower in a forbearance program and promised to consider whether additional assistance could be offered. *Id.* at 57. Though the lender made timely payments under the forbearance program and an oral agreement to modify his loan was reached, the bank foreclosed and sold the property. *Id.* at 58-59.

Though the *Lueras* court held that a lender's owes a "duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale," *id.* at 68-69, it refused to broadly apply *Jolley*'s holding in the home mortgage context. The opinion explained that

> [w]e disagree with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives. As the *Jolley* court recognized, "there is no express duty on a lender's part to grant a modification under state or federal loan modification statutes." . . . We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a

need for a loan modification, then no moral blame would be attached to the lender's conduct.

*Id.* at 67.

The *Lueras* court concluded that the lenders "did not have a common law duty of care or offer, consider, or approve a loan modification, or to offer Lueras alternatives to foreclosure." *Id.* at 68. It further noted that Lueras did not allege that the lenders "did anything wrongful that made him unable to make the original monthly loan payments" or that they "caused or exacerbated his initial default by negligently servicing the loan." *Id.* The court also held that the lender could not be liable for failing to "follow through" on an agreement it had made to modify his loan because the remedy for that failure lay in breach of contract as opposed to negligence. *Id.*

After *Lueras* was decided, however, another California Court of Appeal decision held that a lender that opted to accept the plaintiff's loan modification application owed a duty to exercise reasonable care in processing and reviewing it. *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (2014). The *Alvarez* court acknowledged the apparent conflict between *Jolley* and *Lueras*, and also noted that *Lueras* had cited multiple federal district court opinions, some concluding that "a lender owes not duty of care to a borrower to modify a loan" and others "recognizing that a lender does owe a borrower a duty of care in negotiating or processing an application for a loan modification." *Id.* at 947. The *Alvarez* court found one decision in the latter camp to be particularly persuasive, *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290, 2010 WL 1881098, *3 (N.D. Cal. May 10, 2010). *Garcia* concludes that a lender "arguably owed [p]laintiff a duty of care in processing [p]laintiff's loan modification application, as at least five of the six [*Biakanja*] factors weigh in favor of finding a duty of care." Following *Garcia*, the *Alvarez* court found that

[h]ere, because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weigh in favor of a duty. The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants. Plaintiffs allege that the mishandling of their applications 'caus[ed] them to lose title to their home, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages.' . . . 'Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.' Should plaintiffs fail to prove that they would have obtained a loan modification absent defendants' negligence, damages will be affected accordingly, but not necessarily eliminated.

*Alvarez*, 228 Cal. App. 4th at 948-49 (internal citations omitted).

In its discussion of the fifth *Biakanja* factor, the *Alvarez* court found "highly relevant" that—as the *Jolley* court had found—"the borrower's 'ability to protect his own interests in the loan modification process [is] practically nil' and the bank holds 'all the cards.'" *Id.* at 949 (citing Jolley, 213 Cal. App. 4th at 900). The *Alvarez* court ultimately determined that a borrower's lack of bargaining power, "coupled with conflicts of interest that exist in the modern loan servicing industry[,] provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification." *Id.*

As the *Alvarez* court noted, some federal district courts have held that a lender evaluating a loan modification application has a duty of reasonable care to the borrower and others have found that no such duty exists. That split persists in light of the tension between the holdings in *Alvarez* and *Lueras* and the lack of California Supreme Court authority on the issue. One recent decision determined that "in light of *Alvarez, Jolley*, and the statutory scheme established by HBOR on which they both heavily rely, and in

accordance with the well-reasoned opinion in *Garcia v. Ocwen*, the Court determines that having offered Plaintiffs an opportunity to apply for a modification, Wells Fargo [the mortgage lender] owed them a duty of reasonable care in considering their application." *Segura v. Wells Fargo Bank, N.A.*, CV-14-04195, 2014 WL 4798890, at *14 (C.D. Cal. Sept. 26, 2014).

Another recent decision, *Griffin v. Green Tree Servicing, LLC*, reached the opposite holding after a thorough examination of the above cases and acknowledgement of an unpublished pre-*Alvarez* Ninth Circuit case and an unpublished California appellate case that followed *Lueras*. *Griffin*, CV 14-9408, 2015 U.S. Dist. LEXIS 93135, at*39 (C.D. Cal. April 9, 2015) (citing *Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 569-70 (March 13, 2014) (unpub. disp.) and *Aspiras v. Wells Fargo Bank, N.A.*, 219 Cal. App. 4th 948 (Aug. 21, 2013) (unpub. disp)). The *Griffin* court concluded "not without doubt . . . that the weight of California and Ninth Circuit authority supports limiting *Jolley* to loans made by construction lenders, and leaves intact the general rule that a lender owes no duty to a borrower unless it steps outside its conventional role as a lender. Because negotiating a loan does not fall outside this role, Griffin has not adequately alleged that defendants owed her a duty of care." *Griffin*, 2015 U.S. Dist. LEXIS 93135 at*42.

Though this Court shares the *Griffin* court's uncertainty about how the California Supreme Court would ultimately rule on the issue, it concludes that given the facts of this case, the *Biakanja* factors weigh in favor of finding that a duty of reasonable care was owed with respect to the process of Mr. Ko's application for a modification.

Here, some of the allegations included in Mr. Ko's negligence claim clearly fail as a matter of law. His assertion that BANA "gave Plaintiff a bogus, ludicrous, illegal and predatory loan modification," (Compl. ¶ 74.), cannot support a cause of action in

negligence: Ko signed a contract for his 2010 loan modification and he is not asserting that BANA failed to perform under the terms of the contract.  If this is a plea that he was misled about the terms of the contract, he could assert a negligent misrepresentation or fraud claim, but he would then be subject to the Rule 9(b) pleading standard as discussed in the section immediately above.  His assertions about BANA failing to "discuss and/or explore . . . other options to keep him in his home pursuant to their promise to do so" is also too vague for the Court to conclude that a duty was created, given its failure to mention anything about the nature of the promises alleged.

Nonetheless, one allegation in Mr. Ko's negligence claim is more compelling: he asserts that BANA "represented to Plaintiff and similar borrowers that to begin the loan modification process, Plaintiff must first stop making payments and becoming [sic] in default.  Not only does this increase the late fees, charges, and interest[] accrued to be capitalized but also causes a shock in payment when [BANA] denies Plaintiff for loss mitigation assistance."  (Compl. ¶ 74.)  He further asserts that BANA "negligently ignored Plaintiff's loan modification applications,"  (Compl. ¶ 68), that during repeated calls to BANA he was directed to different customer service representatives rather than a SPOC with specific knowledge of his account.  (Compl ¶ 22.)  The alleges that despite having submitted a complete request for a loan modification in September 2014, he has not received an acknowledgement of the receipt of that application, a request for further documentation, or a written denial of the application.  (Compl. ¶ 19, 22.)  He further alleges that during the workout process, BANA has caused him to incur late fees and other servicing costs.  (Compl. ¶ 23.)

It is a close question whether under California law the bare act of agreeing to review a loan modification application creates a duty in the lender with respect to the applicant.  Here, BANA has allegedly taken a significant additional step: by making any such review contingent on the borrower first defaulting on the loan, BANA is directing

borrowers' behavior in a way that affects the application of the *Biakanja* factors.  Many parties seeking a modification do so because they have no choice but to default, but a policy of no review until default leaves borrowers facing impending (but not imminent) financial disaster with a difficult choice: deciding whether to immediately default in order to have a chance at obtaining a loan modification as soon as possible, or to continue making full payments—knowing making those payments will likely soon be impossible—in the hope that their financial circumstances will improve before there is no choice but to default.

The second *Biakanja* factor concerns the foreseeability of harm to a plaintiff.  By creating an inducement for plaintiffs to default (and incur associated fees and interest payments) for there to be even a possibility of a modification, BANA has increased the foreseeability that a borrower would be harmed by the additional expenses of default incurred during a negligent implementation of the modification.  The third factor concerns the degree of certainty that the plaintiff suffered injury.  Final resolution of this question requires a fact-specific inquiry, but it is very likely that a borrower induced to default before it becomes absolutely necessary suffers associated injuries involving increased fees and an increased possibility of losing the home.  The fourth factor—the closeness of the connection between Defendants' conduct and the injury suffered—is also heightened in cases where the borrower is induced to default before seeking a modification and then his application is negligently reviewed.  The fifth factor—the moral blame attached to the defendant's conduct—is heightened when the defendant first induces a borrower to take a vulnerable position by defaulting and then subjects the borrower's loan application to a review process that does not meet the standard of ordinary care.  Finally, the policy of preventing harm is enhanced by a rule that if a lender demands that a borrower default before a loan modification is considered, that demand carries with it a duty of care with respect to the review of the application.

Here, the weighing of the *Biakanja* factors leads the Court to conclude that by making any possibility of receiving a loan modification contingent on the plaintiff first defaulting on the mortgage, BANA incurred a duty to carry out the review of the resulting loan modification with ordinary care.  Mr. Ko has asserted that he was required to default before seeking a loan modification, that BANA negligently "ignored" the loan modification application he filed, and that though he filed his modification application last September he has not received approval, denial, or a request for more information with respect to his application despite numerous calls to BANA.  He has yet to receive a notice of default on the home, but he assert damages, as this process has "increase[d] the late fees, charges, and interest[]."  The Court finds that he has stated a plausible negligence claim.  BANA's motion to dismiss this claim is therefore DENIED.

### 5.  California's Unfair Competition Law (Cal. Civ. Code § 17200)

The UCL prohibits "unfair competition," which is defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's false advertising law]."  Cal. Bus. & Prof. Code § 17200.  The purpose of the UCL is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  The scope of the UCL is broad.  The UCL covers "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The statute "borrows" violations from other laws by making them independently actionable as unfair competitive practices.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).  Additionally, "a practice may be deemed unfair even if not specifically proscribed by some other law."  *Cel-Tech*, 20 Cal. 4th at 180.  Because the UCL "is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or

fraudulent." *Id.*  The state legislature "intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Barquis v. Merchants Collection Ass'n*,  7 Cal. 3d 94, 111 (1972).

Mr. Ko states in his complaint that BANA violated the UCL by "engaging in unlawful, unfair and fraudulent business practices" as discussed elsewhere in the complaint.  The only statutory violation he alleged in the section of his complaint addressing § 17200 was the violations of the HBOR's SPOC requirement, California Civil Code § 2923.7.  BANA argues that Mr. Ko has not stated a claim under the "unlawful" prong of the UCL because he did not adequately plead his § 2923.7 claim. However, as discussed above, Mr. Ko has adequately pled this statutory violation. Accordingly he can proceed with this claim under the "unlawful" prong of the UCL as well.  Though the pleading of Mr. Ko's UCL claim itself is sparse, this section of his complaint incorporates his earlier pleadings and he has clearly asserted the statutory violation elsewhere in the complaint.  (Compl. ¶¶ 30-36.)

BANA further asserts that Mr. Ko has not stated a claim under the unfairness prong of the UCL because that prong requires a showing of a substantial consumer injury.  *Davis v. Ford Motor Credit C LLC*, 179 Cal. App. 4th 581, 598 (2009).  Though the portion of Mr. Ko's complaint devoted to the § 17200 claim refers to "Plaintiff's injuries from Defendant's unfair business practices," it does not state specifically what those injuries are.  Mr. Ko discusses various injuries he suffered elsewhere in his complaint, but rather than speculating about which, if any of those are the "substantial consumer injuries" he is alleging in connection to § 17200, the Court finds that the best course is to give Mr. Ko the opportunity to make his assertions with regard to the unfairness portion of his claim with more clarity.  Similarly, though Mr. Ko alleges that BANA engaged in "fraudulent" business practices, (Compl. § 89), he does not indicate

what those practices are.  As such practices must be pled with particularity under Rule 9(b), he has clearly not made any fraud allegations under the UCL.

Accordingly, BANA's motion to dismiss Mr. Ko's UCL claim is DENIED with respect to his allegation of unlawful practices connected to the HBOR, but is GRANTED with respect to his allegations of unfair and fraudulent business practices.

## IV.  CONCLUSION

Mr. Ko's motion to remand is DENIED.  BANA's motion to dismiss is DENIED with respect to Mr. Ko's California Civil Code § 2923.7 claim, the negligence claim, and the portion of the UCL claim pertaining to unlawful conduct.  BANA's motion to dismiss is GRANTED without leave to amend with respect to Mr. Ko's contract, promissory estoppel, and breach of the covenant of good faith and fair dealing claims.  BANA's motion to dismiss is GRANTED with leave to amend with respect to Mr. Ko's California Civil Code § 2923.6 claim, negligent misrepresentation claim, and the portions of the UCL claim pertaining to unfair business practices and fraudulent business practices.  Mr. Ko will have 30 days from the issuance of this order to file an amended complaint, should he choose to do so.

DATED:    October 19, 2015

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE